IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
MISSOULA DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | CR 24-50-M-DWM |
| Plaintiff, | |
| vs. | OPINION and ORDER |
| NICOLE LYNN SHAIN, | |
| Defendant. | |

Defendant Nicole Lynn Shain is charged with possession with intent to distribute methamphetamine and fentanyl in violation 21 U.S.C. § 841(a)(1). (Doc. 1.)  The charges arise out of the seizure of her vehicle that occurred in Ronan, Montana, on the Flathead Indian Reservation on July 1, 2024, and its search pursuant to a warrant the next day.  Shain seeks to suppress the evidence resulting from the search and seizure of her vehicle on the basis that law enforcement lacked probable cause for both her arrest and the search warrant for her vehicle. (Doc. 17.)  The government opposes.  (Doc. 21.)  A suppression hearing was held on December 9, 2024.  The government called one witness, Tribal Investigator Will Mesteth.  Having considered the parties' filings, the record evidence, and the arguments at the hearing, Shain's motion to suppress is denied.

## BACKGROUND

The factual background is taken from the in-court testimony of Flathead Tribal Police Drug Investigator, Will Mesteth, the law enforcement incident reports by Investigators Vern Fisher and Will Mesteth, (Doc. 18-1), the search warrant application, (Doc. 18-2), the search warrant, (Doc. 18-3), and the return on search warrant, (Doc. 18-4).  The Court finds Investigator Mesteth to be credible.

On July 1, 2024, Investigators Fisher and Mesteth were on unmarked patrol in Pablo, Montana.  They observed a black Land Rover Discovery with Idaho plates street-parked near a "recovery village," or inpatient housing for people dealing with addition.  Investigator Mesteth testified that the "recovery village" is currently in transition to a sober-living place so both people in recovery and drug users frequent this area.  According to Fisher and Mesteth, there are several known drug houses nearby.  Investigator Fisher did not recognize the vehicle as belonging to a resident.  The investigators observed a female sitting in the vehicle and circled the block to further observe the vehicle; however, by that time the vehicle had left.

About two hours later, the investigators were patrolling in Ronan, Montana, and saw the vehicle parked at Ronan Town Pump.  The investigators requested that Tribal Dispatch run the vehicle's license plate.  They were advised by Dispatch that the vehicle was registered to Nicole Lynn Shain.  Dispatch further advised that Shain had a valid driver's license, an alias of Nicole Abraham, and no wants or

warrants.  Dispatch also provided investigators with a picture of Shain.  Based on this picture, the investigators identified the driver as Shain when she exited her vehicle at the Town Pump.  Investigator Mesteth contacted Bureau of Indian Affairs ("BIA") Agent Cody Sijohn in Idaho to inquire whether the BIA had any contact with Shain.  Agent Sijohn informed the investigators Shain had a criminal history of drug possession and distribution in the State of Idaho.  Investigator Fisher found a case online where Nicole Shain-Abraham was charged with distributing dangerous drugs.

After about a half an hour, Investigators Fisher and Mesteth followed as Shain left the Town Pump in her vehicle and turned onto U.S. Highway 93.  Shain parked at Suds and Duds Car Wash in Ronan.  While parked, Shain exited the vehicle and placed a green grocery bag into a garbage bin.  After Shain drove away, investigators drove directly to the garbage bin, arriving there in seconds.  No other individual went to the garbage bin in that time period.  Investigator Mesteth then activated his body camera and searched the discarded bag.  Inside the bag, Investigator Mesteth located a single piece of tinfoil, which had a charred substance on its surface that smelled distinctly of burnt fentanyl.  In the char, he could see the centralized area where the drug had broken down and distinctive track marks.  Investigator Mesteth then placed the tinfoil into an evidence bag.  Both investigators recognized the tinfoil as drug paraphernalia.  Investigator Fisher

took custody of the evidence.  While the investigators were looking through the garbage, Tribal Police Investigator Desmond Joseph, Jr., took over surveillance of Shain.  Investigator Fisher called Investigator Joseph and advised him to stop Shain and arrest her for criminal possession of drug paraphernalia.  Investigator Joseph advised that Shain had stopped at Glacier Bank, and he would make contact with her.

When Investigators Fisher and Mesteth arrived at Glacier Bank, Shain was handcuffed, and the driver's side door of her vehicle was ajar.  Approaching the open driver's door, both investigators could smell the distinct odor of burnt fentanyl coming from inside.  From outside Shain's vehicle, both Investigators Fisher and Mesteth observed tinfoil with a black charred substance in the center console and on the passenger seat within a purse.  Investigator Joseph advised Shain of her rights.  Shain did not consent to search of her vehicle.  Investigator Fisher advised Shain why she had been stopped, and that she was under arrest for criminal possession of drug paraphernalia.  Shain was transported to the Tribal jail.  Investigator Mesteth informed Investigator Joseph that they would seize the vehicle and apply for a search warrant.  After being sealed, the vehicle was towed to a secure impound garage in Polson, Montana.

The next day, Investigator Fisher applied for and executed a search warrant of Shain's vehicle.  The search of the vehicle resulted in the following items being

seized: six pieces of tinfoil with drug residue; seven Ziploc bags with round blue pills imprinted M30, believed to contain fentanyl; three Ziploc bags containing a white crystalline substance suspected to be methamphetamine; two metal containers of which one contained a paper bindle of suspected methamphetamine; a glass pipe believed to have been used to smoke methamphetamine; a melted hollow pen sheath with drug residue; a digital scale in its package; numerous Ziploc bags; and a cellular phone.

## ANALYSIS

Shain argues that because the investigators lacked probable cause to arrest her or seize and search her vehicle, the evidence obtained was "fruit of the poisonous tree" that should be suppressed.  Both arguments fail.

## I.   Shain's Arrest

The Fourth Amendment of the United States Constitution provides that "no [w]arrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." U.S. Const. amend. IV.  Under the Fourth Amendment, though police are not required to have an arrest warrant to make a public arrest, a warrantless arrest must be supported by probable cause.  *Maryland v. v. Pringle*, 540 U.S. 366, 370 (2003).  "An officer has probable cause to make a warrantless arrest when the facts and circumstances within his knowledge are sufficient for a reasonably prudent

person to believe that the suspect has committed a crime." *Rosenbaum v. Washoe Cnty.*, 663 F.3d 1071, 1076 (9th Cir. 2011).  A probable cause analysis involves both facts and law. *Id.*  "The facts are those that were known to the officer at the time of the arrest.  The law is the criminal statute to which those facts apply." *Id.* Ultimately, "the totality of the[se] circumstances" must suggest a "fair probability" that the suspect has committed a crime.  *See United States v. Valencia-Amezcua*, 278 F.3d 901, 906 (9th Cir. 2002) (internal quotation marks omitted).  Specifically, "[i]n drug investigations, the court may consider the experience and expertise of the officers involved.  This experience and expertise may lead a trained narcotics officer to perceive meaning from conduct which would otherwise seem innocent to the untrained observer." *United States v. Buckner*, 179 F.3d 834, 837 (9th Cir. 1999) (internal citation omitted).

In Montana, possession of drug paraphernalia is a crime.  Mont. Code Ann. § 45-10-103.  In relevant part, this statute states, "it is unlawful for a person to use or to possess with intent to use drug paraphernalia to . . . convert, . . . prepare, . . . contain, . . . ingest, inhale, or otherwise introduce into the human body a dangerous drug." *Id.*  Factors used to determine what constitutes drug paraphernalia are set forth by Montana law.  Mont. Code Ann. § 45-10-102.

Here, Shain argues that Investigators Fisher and Mesteth's discovery of charred tinfoil in the garbage that she had thrown away did not constitute probable

cause to support her arrest by Investigator Joseph.  The government argues that Shain's possession of burnt foil with drug residue on it provided investigators probable cause to arrest her for violation of Montana law, § 45-10-103,[1] because upon consideration of the "relevant factors" under § 45-10-102, there was a fair probability that the foil discovered was used in such a manner that constituted drug paraphernalia.  The government is correct.

Under § 45-10-102, specific factors can be used to determine what constitutes drug paraphernalia.  Here, investigators were informed that Shain had a criminal history of drug possession and distribution in the State of Idaho, which can constitute "prior convictions . . . of an owner or of anyone in control of the object under any state or federal law relating to any controlled substance or dangerous drug," under § 45-10-102(2).  Upon inspection of the discarded green grocery bag, investigators found a single piece of tinfoil with a charred substance on its surface that smelled distinctly of burnt fentanyl, which can be considered "residue of [a] dangerous drug" within the meaning of § 45-10-102(5).  Using their "experience and expertise," *Buckner*, 179 F.3d at 837, both investigators recognized the charred tinfoil as drug paraphernalia.  It was following this discovery that Investigator Fisher called Investigator Joseph and advised him to

---

[1] The government erroneously refers to this section of the Montana Annotated Code as "45-5-103."  (Doc. 21 at 6.)

stop Shain and arrest her for criminal possession of drug paraphernalia. Because "the totality of the[se] circumstances" suggested a "fair probability" that Shain had committed a crime, *see Valencia-Amezcua*, 278 F.3d at 906, investigators had probable cause to arrest her.

Since Investigators Fisher and Mesteth had probable cause to arrest Shain, Investigator Joseph's subsequent warrantless arrest of Shain at the direction of Investigator Fisher was authorized under the collective knowledge doctrine. *See United States v. Ramirez*, 473 F.3d 1026, 1033, 1037 (explaining the collective knowledge doctrine applies "where an officer (or team of officers), with direct personal knowledge of *all* the facts necessary to give rise to . . . probable cause, directs or requests that another officer, not previously involved in the investigation, conduct a[n] . . . arrest."). Accordingly, Shain's arrest was lawful.

Ultimately, because Shain's arrest was supported by probable cause, the Court need not consider the government's alternative argument.

## II. Search and Seizure of Shain's Vehicle

Shain further argues that the search warrant application was not supported by probable cause and that the charred tinfoil visible in her car cannot be considered in the search warrant's probable cause analysis because it followed her unlawful arrest. Shain's arguments therefore require inquiry into whether the evidence seized in plain view can be considered, and whether the search warrant is

supported by probable cause. Ultimately, both of Shain's arguments are unavailing because Shain's arrest was lawful, the warrantless seizure of evidence was authorized by the plain view doctrine, and the search of her vehicle was authorized by a valid warrant supported by probable cause.

### a. Application of the Plain View Doctrine

The plain view doctrine permits the warrantless seizure by police of private possessions where officers are lawfully in a position from which they can view a particular area and it is "immediately apparent" to the officers that the items they observe may be evidence subject to seizure. *Coolidge v. New Hampshire*, 403 U.S. 443, 464–68 (1971) (establishing the requirements for application of the plain view doctrine); *Horton v. California*, 496 U.S. 128, 141 (1990) (clarifying that the discovery of evidence in plain view does not need to be inadvertent).

First, as has been established above, Shain's arrest was lawful. Therefore, investigators were lawfully in a position from which they could look into Shain's car, specifically viewing the center console and the passenger seat. *See Coolidge*, 403 U.S. at 464–66; *Horton*, 496 U.S. at 141. It was also "immediately apparent" to officers that the charred tinfoil in the center consol and on the passenger seat was likely drug paraphernalia evidence subject to seizure. *See Coolidge*, 403 U.S. at 466; *Horton*, 496 U.S. at 141. The Supreme Court has explained the "immediately apparent" language to mean that there is "probable cause to associate

the property with criminal activity," *Texas v. Brown*, 460 U.S. 730, 741–42 (1983) (quoting *Payton v. New York*, 445 U.S. 573, 587 (1980)), and held that "probable cause is required" to invoke the plain view doctrine, *Arizona v. Hicks*, 480 U.S. 321, 326 (1987). In this context, "[p]robable cause arises when the available facts would warrant a reasonably cautious person's belief that the items in plain view are useful as evidence of a crime." *United States v. Miller*, 769 F.2d 554, 557 (9th Cir. 1985) (citing *Brown*, 460 U.S. at 742).

Here, investigators had probable cause to believe that the charred tinfoil was drug paraphernalia because they smelled the distinct odor of burnt fentanyl coming from the vehicle, and had discovered similarly charred tinfoil that smelled of burnt fentanyl thrown away by Shain. *See* Mont. Code Ann. § 45-10-103. Accordingly, this evidence was lawfully seized under the plain view doctrine.

### b. Search Warrant Application

The Fourth Amendment imposes three requirements for the issuance of a valid search warrant. First, the warrant must be issued by a neutral and detached magistrate. *Dalia v. United States*, 441 U.S. 238, 255 (1979). Second, the warrant must be supported by "probable cause to believe that the evidence sought will aid in a particular apprehension or conviction for a particular offense." *Id.* (internal quotation marks omitted). Third, the warrant must describe the things to be seized and the place to be searched with particularity. *Id.* A search warrant affidavit

demonstrates probable cause when, "under the totality of the circumstances, it reveals a fair probability that contraband or evidence of a crime will be found in a particular place." *United States v. Celestine*, 324 F.3d 1095, 1102 (9th Cir. 2003).

Shain argues that the search warrant was not supported by probable cause because her arrest was unlawful, which should result in the suppression of evidence obtained as a result of her arrest. This argument fails. First, as established above, Shain's arrest was lawful. Second, the search warrant application relied upon the facts articulated above in the background section to establish probable cause for the issuance of a search warrant. In summary, the application describes the following facts: Shain's vehicle was parked in the vicinity of a recovery village with several known drug houses nearby, Shain was found to have a criminal history of drug possession and distribution in the State of Idaho, Shain's discarded green bag contained a piece of tinfoil that had melted drug residue on it and smelled of burnt fentanyl, Investigator Joseph arrested Shain, and as Investigator Fisher approached her vehicle, he could smell burnt fentanyl and in plain view saw tinfoil with melted drug residue in the center console and on the passenger seat within a purse. The facts of a distinct burnt fentanyl smell and the charred pieces of tinfoil with residue "reveal[] a fair probability that contraband or evidence of" possession of drug paraphernalia in violation of Montana law would be found in Shain's car. *See Celestine*, 324 F.3d at 1102. Accordingly, the search

warrant application was supported by probable cause.

Because the search warrant application is supported by probable cause, the

Court need not consider the government's alternative arguments.

CONCLUSION

Accordingly, IT IS ORDERED that Shain's motion to suppress, (Doc. 17),

is DENIED.

DATED this _10th_ day of December, 2024.

_____

Donald W. Molloy, District Judge
United States District Court